## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **BONO HOLDINGS, INC.,** | : | **Bankruptcy No. 08-70259 BM** |
| | : | |
| **Debtor** | : | **Chapter 11** |
| | : | |
| **SALONE HOLDINGS, INC.,** | : | **Bankruptcy No. 08-70278 BM** |
| | : | |
| **Debtor** | : | **Chapter 11** |

| | | |
|---|---|---|
| **BONO HOLDINGS, INC., SALONE HOLDINGS, INC., and LAWRENCE J. SALONE,** | : : : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | **Adversary No. 08-7046 BM** |
| | : | |
| **QUAKER STEAK & LUBE** | : | **Adversary No. 08-7047 BM** |
| **FRANCHISING CORPORATION; LUBE** | : | |
| **HOLDINGS, INC.; GARY J. MESZAROS;** | : | |
| **GEORGE S. WARREN, III; ANDY** | : | |
| **GUNKLER; DENNIS J. LIEB; MICHAEL** | : | |
| **J. STACK; and JOHN VOTINO,** | : | |
| | : | |
| **Defendants** | : | |

Appearances:  William J. Labowitz, Esq. for Plaintiffs
Edward A. Schenck, Esq. for Defendants

### MEMORANDUM OPINION

Plaintiffs in this adversary action assert that defendants breached a franchise agreement between Quaker Stake & Lube Franchising and Bono Holdings.  They additionally assert that defendants intentionally or negligently misrepresented a fact concerning sales of Quaker Steak & Lube restaurants for the purpose of inducing them to enter into the franchise agreement.  Finally, plaintiffs have asserted a claim for civil conspiracy to commit these acts.

For reasons which will be addressed later on in this memorandum opinion, defendants deny that plaintiffs may prevail on any of these claims.

Judgment will be entered in favor of defendants and against plaintiffs for reasons which will be set forth below.

## BACKGROUND

Plaintiff Lawrence Salone (hereafter simply referred to as "Salone") is the sole owner and principal of co-plaintiffs Bono Holdings, LLC and Salone Holdings, Inc., both of which are debtors in bankruptcy.

Bono Holdings is a franchisee of Quaker Stake & Lube Franchising and operated a Quaker Steak & Lube restaurant in State College, Pennsylvania.. Bono Holdings owned the liquor license for the restaurant and all of its tangible assets.  Salone Holdings was the lessee of the building of the building in which the restaurant operated and paid the rent.

Salone has a degree in mechanical engineering and has (or had) several interests in businesses other than the restaurant at issue in this case.  His other interests include: Freshtech, a welding shop; S&S Ventures, which purchased shares of preferred stock issued by defendant Lube Holdings, Inc.; SNG, which operated a pizza shop; and a Fudrucker's franchise.   Clearly, Mr. Salone is a sophisticated businessman.

Defendant Quaker Stake & Lube Franchising is in the business of franchising Quaker Steak & Lube restaurants. It also operates several Quaker Steak & Lube restaurants on its own.

Defendants Lube Holdings, Inc. owns the assets of Quaker Steak & Lube Franchising.

Defendants Meszaros and Warren started up the initial Quaker Steak & Lube restaurant and were officers of Quaker Steak & Lube Franchising and Lube Holdings at all relevant times. The remaining individual defendants were employees and acted as agents of Quaker Steak & Lube Franchising at all relevant times.

Salone approached defendants Meszaros and Warren at their flagship restaurant early in the year 2004 and showed them an energy drink he wanted them to consider selling in Quaker Steak & Lube restaurants. Meszaros and Warren informed Salone during their meeting that Quaker Steak & Lube franchises were available and that Lube Holdings was offering to sell shares of its preferred stock to investors.

Salone met at their suggestion with defendant Lieb, who provided Salone with a copy of a business plan of Lube Holdings for the years 2004 through 2008. The business plan had been prepared a few months earlier in December of 2003. Lieb also provided Salone with a copy of a private placement memorandum for Lube Holding's preferred stock. Salone reviewed the documents with assistance from Lieb

- 3 -

Both the business plan and the private placement memorandum contained identical pages entitled "unit Economics". Among other things, the page listed what was characterized as "Average Unit Sales" depending on the size of a Quaker Steak & Lube restaurant. Average unit sales for Quaker Steak & Lube restaurants with 10,444 square feet of space were $100,00 per week and $5,250,00 per year. Average unit sales for restaurants with 8,200 square feet of space were $80,000 per week and $4,000,000 per year.

S&S Ventures, which by Salone and his son, created and executed a stock purchase agreement for 1,000 shares of Lube Holding stock on May 28, 2004. Salone executed the agreement on behalf of S&S Ventures in his capacity as its president.

Salone thereafter expressed interest in becoming a Quaker Steak & Lube franchisee, whereupon he was introduced to defendant Gunkler. At their meeting, they discussed potential sites for a restaurant and what a Quaker Steak & Lube restaurant might be expected to earn.

Prior to October of 2004, Salone and various employees of Quaker Steak & Lube viewed potential sites for a Quaker Steak & Lube restaurant.

Salone executed a document entitled "Area Development Agreement" on October 6, 2004. For $40,000, Salone purchased the exclusive right to develop and operate Quaker Steak & Lube restaurants in four specified areas. One of the areas was State College, Pennsylvania.

- 4 -

Before entering into a franchise agreement to operate a Quaker Steak & Lube restaurant in State College, Salone had his accountant prepare a projection of revenues such a restaurant could expect to generate for the years 2006 through 2009. The report projected that such a restaurant would generate revenues totaling $4,130,193 in the year 2006 and that revenues would incrementally increase to $4,557,960 by the year 2009. Salone reviewed the projection before executing the franchisee agreement and used it when he applied for financing for the State College restaurant.

Salone asked Quaker Steak & Lube Franchising prior to August of 2005 for information concerning sales for other Quaker Steak & Lube restaurants. Defendants told Salone that such information was confidential, but suggested that he contact other franchisees and ask if they would provide such information. Salone ignored the suggestion and did not attempt to obtain such information from other franchisees before entering into the franchise agreement.

Bono Holdings and Quaker Steak & Lube Franchising entered into a franchisee agreement on August 1, 2005. Salone executed the agreement on behalf of Bono Holdings in his capacity as its president.

Construction of the State College restaurant began in September or October of the year 2005 and was completed in January of 2006. The restaurant opened for business on January 18, 2006.

- 5 -

Revenues for the year 2006 totaled $3,990,857.00 and averaged $79,817.14 per week.  Weekly sales averaged $100,568.58 for the first nineteen weeks, but thereafter steadily declined until the restaurant ceased operating.  Revenues for the year 2007 totaled $3,158,520.00 and averaged $60,740.70 per week.  They further declined to $2,160,959.00 for the year 2008 and averaged $45,019.80 per week.  The restaurant ceased operating on November 23, 2008.

Bono Holdings filed a voluntary chapter 11 petition on March 13, 2008. The bankruptcy schedules identified assets with a total declared value of $410,675.59.  Quaker Steak & Lube Franchising was listed as having a disputed general unsecured claim in the amount of $77,357.03 for, among other things, unpaid royalties..  Quaker Steak & Lube Franchising subsequently filed a proof of claim in the amount of $250,529.59 for unpaid franchise royalties, advertising costs and attorney's fees.

Salone Holdings followed suit and filed a voluntary chapter 11 petition six days later on March 19, 2008.  The schedules accompanying the petition listed assets with a total declared value in the amount of $0.00 and listed liabilities totaling $3,602,960.42.  The sole asset listed on the schedules was its interest in the leasehold improvements to the building in which the State College restaurant was listed.  The value of this interest was "Unknown".

Salone Holdings subsequently amended its schedules to list a potential claim against Quaker Steak & Lube Franchising as an asset. The value of the claim was "Unknown".

Salone Holdings, Bono Holdings and Salone commenced this adversary action against defendants on August 1, 2008, while they were debtors-in-possession.

Both bankruptcy cases were converted to chapter 7 proceedings on January 8, 2009, after debtors conceded that they would not be able to successfully reorganize. A chapter 7 trustee thereafter was appointed.

The adversary action was tried is now ready for decision.

## ANALYSIS

## The Complaint

The complaint in this adversary action is comprised of seven counts.

Count I of the complaint asserts a claim for fraudulent misrepresentation and is against all defendants. Plaintiffs assert that defendants intentionally misrepresented to Salone that he would realize gross revenues in the amount of $100,000 per week and $5,000,000 per year if he purchased a franchise and operated a Quaker Steak & Lube restaurant.

Count II is against all defendants and asserts that they negligently misrepresented or omitted a material fact concerning the annual revenues such a restaurant would make.

Count III is against defendants Quaker Steak & Lube Franchising, Dennis Lieb and John Votino only and asserts a claim for defamation.

Count IV is against the same defendants only and asserts a claim for commercial disparagement.

Count V is against all defendants and asserts a claim for breach of the franchise agreement and of an implied covenant of good faith and fair dealing.

Count VI asserts a claim against all defendants for civil conspiracy: to defraud plaintiffs by inducing them to enter into the franchise agreement; to commit other torts which harmed defendants; and to breach the franchise agreement.

Count VII seeks to pierce the corporate veil and to hold the individual defendants personally liable for the actionable conduct of Quaker Steak & Lube Franchising and Lube Holdings.

At the commencement of trial, plaintiffs announced that they would not pursue Counts III, IV and VII and intended to pursue only Counts I, II, V and VI.

Plaintiffs also indicated that they would pursue a different factual theory with respect to Counts I and II..  Both counts were based In the complaint on an alleged misrepresentation that plaintiffs would realize future gross revenues in the amount of $100,000 per week and $5,000,000 per year if Salone entered into a franchise agreement.

Under the law of Pennsylvania, an alleged misrepresentation concerning a *future* event does not support a claim for common-law fraud.    The

representation must pertain to a present fact in existence when it was made. *Hammer v. Nikol*, 659 A.2d 617, 620 (Pa. Cmwlth. 1995). The claims set forth in Counts I and II were based on an alleged representation concerning what the restaurant would earn in the future, not on a representation concerning a present fact in existence when it was made. Perhaps recognizing this, at the last moment plaintiffs changed the basis upon which the claims set forth in Counts I and II were based.

Plaintiffs now maintain that the entry concerning average unit sales found n the page entitled "Unit Economics" pertained to *past* sales of Quaker Steak & Lube restaurants. According to plaintiffs' revised theory, the entry concerned what gross revenues of Quaker Steak & Lube restaurants were in years prior to 2004 rather than what they would be in future years.

While plaintiffs complained about this change in the alleged facts underlying Counts I and II, they did not request that evidence supporting the revised theory be excluded at trial. We will when addressing the merits of Counts I and II consider whether the evidence produced at trial supported these revised theories.[1]

For reasons that may become apparent later on, we will proceed out of turn and will first address the merits of the claim for breach of contract which is

---

[1]  It should be noted that plaintiffs have not explained how they have standing to bring this adversary action now that they no longer are debtors-in-possession and a chapter 7 trustee has been put in place. Because defendants have not raised this issue, however, we will not address the matter in this memorandum opinion.

set forth in Count V of the complaint.   Proceeding in this manner should facilitate the analysis of the remaining counts still on the table.

## Breach of Contract

Plaintiffs assert in Count V that Quaker Steak & Lube Franchising and the other defendants breached the franchise agreement, including the implied covenant of good faith and fair dealing, by failing to meet certain of its obligations arising under the agreement.

Section 8 of the franchise agreement imposed specific obligations upon Quaker Steak & Lube Franchising.   Among other things, it was obligated to provide the franchisee with site-selection assistance; to advise and consult with the franchisee concerning the operation of the franchise; to provide marketing and public-relations information for use in marketing and local advertising for the restaurant; and to conduct an initial training program and subsequent re-training programs.

As we understand it, plaintiffs assert that Quaker Steak & Lube Franchising failed to meet the above-indicated obligations set forth in § 8 of the franchise agreement.

Some preliminary observations are in order before we address the merits of the claim for breach of contract.

The only plaintiff that was a party to the franchise agreement was Bono Holdings; Salone and Salone Holdings were not.   We are at a loss as to how the

latter have standing in this case to assert a claim against defendants for breach of a contract to which they were not parties.

Moreover, Quaker Steak & Lube Franchising was the only named defendant that was a party to the franchise agreement. Neither defendant Lube Holdings nor the individual defendants were named parties. Plaintiffs have not satisfactorily explained how these defendants had any obligations *vis-a-vis* Bono Holdings under the franchisee agreement.

Pennsylvania law recognizes what is known as the participation doctrine as a basis for liability. *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 621, 470 A.2d 86, 90 (1986). As a general matter, an officer of a corporation who takes part in the commission of a *tort* by the corporation may be personally liable for the acts of other agents, officers or employees of the corporation if that officer specifically directed that the acts be done or otherwise cooperated therein. *Wicks*, 503 Pa. at 621-22, 470 A.2d at 90.

Count VI of the complaint sounds in contract, not in tort. The individual defendants cannot be personally liable under the participation doctrine for any breach of contract that may have occurred.

The upshot of these reflections may be summarized as follows: only Bono Holdings may be a plaintiff and only Quaker Steak & Lube Franchising may be a defendant with respect to Count VI of the complaint.

An action for breach of a contract requires: (1) the existence of a contract; (2) the breach of an obligation arising from the contract; and (3)

resulting damages. *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. 2002), *cert. denied*, 579 Pa. 692, 856 A.2d 834 (2004).

In addition to duties or obligations which are expressly set forth in a contract, a duty of good faith and fair dealing in its performance and enforcement is imposed on each party to the contract. *Conomos, Inc. v. Sun Co., Inc.*, 831 A.2d 696, 706 (Pa. Super. 2003), *appeal denied*, 577 Pa. 697, 845 A.2d 818 (2004).

In the absence of an express provision to that effect, Pennsylvania law implies an agreement by the parties to do and perform those things which reason and justice dictate they should do to effectuate the contract and to refrain from doing anything which would obviate or injure the other party's right to receive the fruits of the contract. *Daniel Van Campen Corp. v. Building and Construction Trades Council of Philadelphia and Vicinity*, 202 Pa. Super. 118, 122, 195 A.2d 134, 136-37 (1963).

The obligation to act fairly and in good faith in the performance of one's contractual duties varies with context and is not amenable to an all-encompassing description.  It is, however, possible to identify certain "strains" of bad faith.  Included are such things as: evasion of the spirit of the bargain struck; lack of diligence and "slacking off"; abuse of a power to specify terms; and interference with or failure to cooperate with the other party's performance. *Somers v. Somers*, 418 Pa. Super. 131, 136-37, 613 A.2d 1211, 1214 (1992).

Bono Holdings has the burden of proof with respect to Count VI. As in civil actions generally, the party having the burden of proof in a contract action must sustain it by a preponderance of the evidence. *Ragnar Benson, Inc. v. Bethel Mart Associates*, 308 Pa. Super. 405, 413, 454 A.2d 599, 602 (1982).

Quaker Steak & Lube Franchising concedes that the first of the above requirements of a cause of action for breach of contract is satisfied. It admits to having a contractual relationship with Bono Holdings by virtue of the franchise agreement. Quaker Steak & Lube Franchising denies, however, that the second and third requirements have been proved. Quaker Steak & Lube Franchising, in other words, denies breaching the franchise agreement and denies that Bono Holdings suffered any damages as a result of such alleged breach.

Bono Holdings asserts in the complaint that Quaker Steak & Lube Franchising breached the franchise agreement by: (1) failing to provide *sufficient* site-selection assistance; (2) failing to provide *sufficient* training assistance and (3) failing to provide *sufficient* start-up marketing. In addition, Bono Holdings asserts that Quaker Steak & Lube Franchising failed to provide a workable and profitable business model; retained rebate checks it obtained from Bono Holding's vendors without permission; and otherwise engaged in concerted efforts to undermine and drive the State College restaurant out of business.

- 13 -

Use of the term "sufficient" in connection with the first three alleged breaches of contract indicates that Quaker Steak & Lube Franchising did in fact provide such things, but (in the estimation of Bono Holdings) did not do well enough in providing them.   Evidence produced at trial establishes that Quaker Steak & Lube Franchising in fact provided these things.  We understand Bono Holdings to claim that Quaker Steak & Lube Franchising did not do so in good faith and fair dealing — i.e., sufficiently — and thus breached the franchise agreement.

We similarly understand the additional assertions that Quaker Steak & Lube Franchising failed to provide a workable and profitable business model and otherwise engaged in concerted a effort to undermine and drive the State College restaurant out of business.  Bono Holdings maintains that Quaker Steak & Lube Franchising also breached its duty of good faith and fair dealing in these respects.

As for the allegation that Quaker Steak & Lube Franchising also violated its obligation to deal with Bono Holdings fairly and in good faith by retaining rebate checks it obtained from Bono Holding's vendors, Bono Holdings produced no evidence showing that Quaker Steak & Lube Franchising obtained and retained such checks.

The issue that has to be addressed in connection with Count VI is whether Quaker Steak & Lube Franchising violated its obligation of good faith and fair dealing in the ways alleged by Bono Holdings. Did Quaker Steak & Lube

- 14 -

Franchising, for instance, evade the spirit of its agreement with Bono Holdings, or wilfully render imperfect performance, or interfere with or fail to cooperate with Bono Holdings in these respects? See *Somers*, 418 Pa. Super. at 136-37, 613 A.2d at 1214.

Review of the testimony offered at trial and of the stack of documents admitted into evidence leads to the conclusion that Bono Holdings did not prove, by a preponderance of the evidence, that Quaker Steak & Lube Franchising failed to deal with Bono Holdings fairly and in good faith. While, as is the case in virtually every real-world situation, the performance of Quaker Steak & Lube Franchising was less than perfect, there is nothing in the record to support the inference that Quaker Steak & Lube Franchising evaded the spirit of the franchise agreement, wilfully rendered imperfect performance or interfered or failed to cooperate with Bono Holdings as it tried to achieve the benefit of its bargain with Quaker Steak & Lube Franchising. Proof of this was sorely lacking.

To the contrary, defendants produced evidence which indicates, for instance, that: defendants visited several potential sites for a restaurant with Salone and consulted with him concerning the pros and cons of each; conducted training sessions for the managers and other employees of the restaurant; provided Bono Holdings with marketing assistance and suggestions about local advertising; and consulted with Bono Holdings about menus and item pricing.

.

- 15 -

In short, the evidence established that defendants made bona fide attempts to fulfill its obligations which arose under the franchise agreement. It was not until well after the restaurant "went south" and was closed that plaintiffs found fault with defendants' performance and accused them of not acting in good faith.

The foregoing considerations compel the conclusion that Bono Holdings may not prevail with respect to Count VI of the complaint.

## Intentional or Negligent Misrepresentation

As was the case for Count V, Counts I and II are against all defendants. As a defense to the claims set forth in these counts of the complaint, defendants assert among other things that the parol evidence rule applies. Evidence of fraudulent or negligent misrepresentations by Bono Holdings or its agents, they maintain, was not admissible. We agree.

Section 23 of the franchise agreement provided in part as follows:

K. This Agreement, the documents referred to in this Agreement and the Exhibits to this Agreement constitute the entire, full and complete Agreement between Franchisor and Franchisee concerning the subject matter of this Agreement....

Section 25 of the franchise agreement provided in part as follows:

A. The success of the business venture contemplated to be undertaken is speculative and depends, to a large extent, upon the ability of the Franchisee as a business person, and the active participation of the Franchisee in the daily affairs of the business as well as other factors. Franchisor does not make any representation or warranty, express or implied, as to the success of the business venture contemplated hereby.

- 16 -

B. Franchisee acknowledges that it has entered into this Agreement after making an independent investigation of Franchisor's operations and not upon any representations as to Gross Sales, volume, or potential earnings which Franchisee in particular might be expected to realize, nor has anyone made any other representation which is not expressly set forth in this Agreement to induce the Franchisee to accept this franchise and execute this Agreement.

The parol evidence rule applies when there is a writing which expresses "the entire contract between the parties". *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 497, 854 A.2d 525, 436 (2004) (citing *Gianni v. Russell Co.*, 281 Pa. 320, 323, 126 A. 791, 792 (1924)).  Whether a written agreement sets forth "the entire contract between the parties" may be determined in either of two ways.

First, the writing must be examined in its entirety.  If it is "complete within itself" and is couched in such terms as import a complete legal obligation without any uncertainty concerning the object or extent of the parties' engagement, it is conclusively presumed that the writing constitutes the entire agreement of the parties. *Yocca*, 578 Pa. at 497-98, 854 A.2d at 436 (citing *Gianni*, 281 Pa. at 323, 126 A. at 792).  How to apply this less-than-helpful standard in a meaningful manner in this instance is far from obvious.

Alternatively, if a written contract contains an integration clause which states that the writing represents the entire agreement of the parties, this is "a clear sign" that the parties intended the written contract to be precisely that.  It expresses all of the parties negotiations, conversations and agreements made

- 17 -

prior to its execution. *Yocca*, 578 Pa. at 498, 854 A.2d at 436 (citing *HCB Contractors v. Liberty Palace Hotel Associates*, 539 Pa. 395, 399-400, 652 A.2d 1278, 1280 (1995)).

The parol evidence rule is a rule of substantive law rather than a rule of evidence. *O'Brien v. O'Brien*, 362 Pa. 66, 71-72, 66 A.2d 309, 311 (1949).  Its purpose is to preserve the integrity of written agreements by refusing to permit a party to the written contract to alter its import through prior or contemporaneous oral declarations. *Rose v. Food Stores, Inc.*, 437 Pa. 117, 120-21, 262 A.2d 851, 853 (1970).

Among other things, the parol evidence rule applies to allegedly fraudulent prior *representations* whose subject-matter was dealt with in a written agreement. *Dayhoff, Inc. v. H. J. Heinz*, 86 F.3d 1287, 1300 (3d Cir.), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996).  The parol evidence rule "would become a mockery" were it otherwise. *Nicolella v. Palmer*, 432 Pa. 502, 506-07, 248 A.2d 20, 23 (1968).

There are, however, exceptions to the parol evidence rule.  When a term in a contract is ambiguous, for instance, parol evidence is admissible to resolve the ambiguity. *Yocca*, 578 Pa. at 498, 854 A.2d at 437 (citing *Waldman v. Shoemaker*, 367 Pa. 587, 591, 80 A.2d 776, 778 (1951)).

There also is a limited exception to the parol evidence rule when fraud is alleged *in the execution of the written agreement* — i.e., when a term of the written agreement was fraudulently omitted from the agreement.    Parol

- 18 -

evidence may be admissible in this context. *Toy v. Metropolitan Life Assurance Co.*, 593 Pa. 20, 50, 928 A.2d 186, 204-05 (2007).

There is, however, no exception to the parol evidence rule for alleged *fraud in the inducement* — i.e., when the other party to the contract allegedly made one or more fraudulent misrepresentations which induced the complaining party to enter into the contract in the first place. *Toy*, 593 Pa. at 50, 928 A.2d at 204-05.

A review of the franchise agreement in its entirety indicates that it is "complete within itself" and is "without any uncertainty concerning the object or extent" of the agreement between Bono Holdings and Quaker Steak & Lube Franchising. *Gianni.*, 281 Pa. at 323, 126 A. at 792. Moreover, the franchise agreement contained an integration clause which stated that the agreement constituted "the entire, full and complete Agreement between Franchisor and Franchisee concerning the subject matter of this Agreement". As a consequence, the parol evidence rule applies in this case unless a recognized exception to the rule is present.

The first of the above-noted exceptions is not applicable here. Plaintiffs do not assert that the franchise agreement contained an ambiguous term which could be resolved if parol evidence were permitted.

What about the second of the above exceptions to the parol evidence rule? Does it come into play here? It does not.

- 19 -

Plaintiffs have not invoked the limited exception for fraud in the execution of a written contract in this instance. They have not, in short, asserted that fraud occurred in the execution of the franchise agreement. The exception to the parol evidence rule where fraud in the execution is alleged simply does not apply to this adversary action.

Plaintiffs instead assert that before Bono Holdings entered into the franchise agreement, defendants intentionally misrepresented average weekly and annual sales of Quaker Steak & Lube restaurants with the intention of *inducing* Salone to execute the franchisee agreement on behalf of Bono Holdings. In contrast to fraud in the execution, fraud in the inducement is *not* a recognized exception to the parol evidence rule. *Toy*, 593 Pa. at 50, 928 A.2d at 204-05.

It follows from the foregoing considerations that the parol evidence rule applies here. Evidence produced at trial which was offered to prove that fraud in the inducement occurred was not admissible. Counts I and II of the complaint in this adversary action consequently must fail for lack of evidence.

Our analysis of Counts I and II does not end with this last determination. Irrespective of whether the parol evidence rule applies here, the evidence plaintiffs offered at trial simply did *not* prove the fraud-based claims found in these counts.

To prevail on a claim for fraudulent misrepresentation, plaintiffs must prove that: (1) there was a misrepresentation; (2) the representation was

material to the transaction at hand; (3) the representation was made with knowledge of its falsity or with recklessness as to its truth or falsity; (4) the representation was made with the intent of misleading another to rely on it; (5) the other person justifiably relied on the misrepresentation; and (6) there was resulting damage or injury to the other party which was proximately caused by such reliance. *Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994).

A party asserting a claim for intentional misrepresentation has the burden of proving its claim by a preponderance of the evidence. *Moser v. DeSetta*, 527 Pa. 157, 163, 589 A.2d 679, 682 (1991).

To prevail on a claim for negligent misrepresentation, plaintiffs must prove that: (1) there was a misrepresentation of a material fact; (2) the person making the misrepresentation knew that it was false at the time it was made, or made it without knowledge of its falsity, or made it under circumstances in which he or she ought to have known it was false; (3) the person making the misrepresentation intended to induce another to act on it; and (5) injury must result to the party who justifiably relied on the misrepresentation. *Gibbs*, 538 Pa. at 210, 647 A.2d at 890.

As is the case with any action involving negligence, a party asserting a claim for negligent misrepresentation has the burden of proving the claim by a preponderance of the evidence. *Harvilla v. Delcamp*, 521 Pa. 21. 25, 555 A.2d 763, 764 (1989).

Assume for the sake of argument that the evidence plaintiffs produced at trail concerning intentional misrepresentation and negligent misrepresentation was admissible. We conclude that such evidence were *not* sufficient to prove all of the above requirements of such causes of action.

Salone was provided early in the year 2004 with a copy of Lube Holding's business plan for the years 2004 through 2008. Shortly thereafter he was provided with a private placement memorandum when he expressed interest in purchasing shares of Lube Holding's preferred stock.

Both documents contained an identical page entitled "Unit Economics". An entry on the page indicated average unit sales of $100,000 per week and $5,25,000 per year for a Quaker Steak & Lube restaurant with 10,400 square feet. It indicated sales of $80,000 per week and $4,000,000 per year for a Quaker Steak & Lube restaurant with 8,200 square feet.

With the addition of a foyer and patio bar, the State College Quaker Steak & Lube restaurant contained approximately 10,400 square feet of space.

Plaintiffs asserted at trial that the entry concerning average sales falsely represented an *historical* fact about *past* sales of Quaker Steak & Lube restaurants. They maintained that only a few Quaker Steak & Lube restaurants had achieved such sales in the past while the great majority had not.

The causes of action set forth in Counts I and II of the complaint fail for a variety of reasons.

The entry concerning average sales of Quaker Steak & Lube restaurants was *not* an historical representation of fact concerning past sales. Salone's testimony that he understood the entry concerning average unit sales in this way is not credible. Even a cursory review of the page entitled "Unit Economics" would reveal that it was not what plaintiffs now claim it to be. It is highly unlikely that a person with as much business experience as Salone had at that time would construe the entry in question to be an historical statement of fact concerning past sales. The extent of Salone's business experience was briefly set forth early in this memorandum opinion.

Rather than being a representation of historical fact about past sales, the entry was a *projection* of hoped-for future sales of Quaker Steak & Lube restaurants. Defendants' testimony that the entry was a projection of future sales for two prototypes of Quaker Steak & Lube restaurants of different sizes was credible. The same is true of defendants' testimony that they never orally represented to Salone that the entry pertained to what Salone *would* make if he opened a Quaker Steak & Lube restaurant.

There is more. Because the entry concerning average sale was a projection rather a statement of historical fact concerning past sales, it was *neither true nor false* at the time Salone received copies of Lube Holding's

- 23 -

business plan for the years 2004 through 2008 and the private placement memorandum.[2]

Even if the entry about average sales of Quaker Steak & Lube restaurants had been a statement of historical fact about past Quaker Steak & Lube restaurants, it was not *material* to the transaction at hand.  Salone was given the page entitled "Unit Economics" in connection with his expressed interest in purchasing shares of Lube Holding's preferred stock.  It was not given to Salone when expressed interest later on in becoming a Quaker Steak & Lube franchisee.  If Salone did rely on this information when he considered whether to become a Quaker Steak & Lube franchisee, his reliance was not justifiable.  The information was not provided to Salone for this latter purpose.

The evidence produced at trial also belies the assertion that Salone in fact relied on what he (mistakenly) believed was a representation concerning past sales of Quaker Steak & Lube restaurants.  At Salone's behest, his accountant independently prepared a projection for the years 2006 through 2009 of what future sales would be for a Quaker Steak & Lube restaurant in State College.  It was the report prepared by his accountant upon which Salone relied in deciding whether to become a Quaker Steak & Lube franchisee.  Testimony that Salone blindly relied on the entry concerning average sales found on the page entitled "Unit Economics" lacks credibility.

---

[2.] Setting aside recondite theories of tense logic, the statement that, say, so-and-so will be President in the year 2030 is neither true nor false when it is made in the year 2009.

Finally, any reliance Salone may have placed on the entry concerning average sales was not justifiable in light of § 23K and §§ 25A and B of the franchise agreement.   Plaintiffs do not contend that these provisions were included in the franchise agreement by accident or mistake or that fraud in the execution occurred.

Salone agreed in subsection 23K, which was discussed previously in this memorandum opinion, that the franchise agreement was the "entire, full and complete" agreement" of the parties concerning its subject matter.   He also agreed in § 25B that he had not relied upon any prior representation concerning gross sales which he as franchisee might be expected to realize. In addition, Salone agreed that *no one had made any other representation which was not set forth in the franchise agreement with the intention of inducing him to enter into the franchise agreement.*

Plaintiffs' contention that they justifiably relied on a prior representation of historical fact about past gross sales is not consistent with § 25B.  They are "stuck" with § 25B and will not be heard to claim that they relied on any such representation.

If plaintiffs relied on a prior representation of historical fact concerning past sales of Quaker Steak & Lube restaurants, they should have protected themselves by insisting on the deletion or modification of § 25B. *Bardwell v. Willis Co.*, 375 Pa. 503, 508-09, 100 A.2d 102, 105 (1953).  They did not do so.

- 25 -

We conclude in light of the foregoing considerations that even if the parol evidence does not apply, plaintiffs failed to produce evidence at trial which proved Counts I and II of the complaint.

## Civil Conspiracy

In Count VI of the complaint, plaintiffs assert that defendants:

> ... wilfully [sic] conspired and acted in concert and with a common purpose to, *inter alia*, unlawfully defraud Plaintiffs by inducing them to enter into the Franchise Agreement and invest in Quaker Steak & Lube's franchise operations, otherwise tortiously harm Plaintiffs and breach the Franchise Agreement.

Plaintiffs have not identified which torts other than intentional misrepresentation and negligent misrepresent the phrase "otherwise tortiously harm Plaintiffs" refers to. As far as we can tell, the phrase refers to the torts of defamation (in Count III) and commercial disparagement (in Count IV), both of which plaintiffs abandoned when trail began.

If this is correct, plaintiffs claim in Count VI that defendants conspired to commit the causes of action stated in Counts I, II and IV. We consequently will limit our analysis to whether plaintiffs proved that defendants engaged in a civil conspiracy to commit the causes of action set forth in these three counts.

Plaintiffs devoted only a brief paragraph in their trial brief to Count VI of the complaint and did not address it at all in their post-trial brief. This suggests that Count VI was little more than an afterthought and that plaintiffs were not serious about it.

To prevail on their claim for civil conspiracy, plaintiffs must prove that: (1) a combination of two (or more) persons acted with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act was committed in furtherance of the common purpose; and (3) actual damages resulted. *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008), *appeal denied,* 967 A.2d 960 (Pa. 2009).

Intent to injure another without legal justification also is required to prevail on a claim for civil conspiracy. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466, 472 (1979).

A claim for civil conspiracy must be proved by "full, clear and satisfactory" evidence .*Phillips*, 959 A.2d at 437.

Civil conspiracy is not independently actionable, but instead depends on the performance of an underlying tortious act.  A verdict on civil conspiracy should yield to a finding for the defendant on the underlying tort because a cause of action for civil conspiracy is "wholly subordinate to the underlying tort's existence." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d. 396, 407 (3d Cir), *cert. denied*, 531 U.S. 1011, 121 S.Ct. 566, 148 L.Ed.2d 485 (2000).

This principle has been articulated mostly in contexts in which the underlying act is an alleged tort.  When, for example, no fraud was committed, there cannot be a cause of action for civil conspiracy to commit fraud.  By parity of reasoning, the principle should apply with equal force when one asserts a claim for civil conspiracy to breach a contract.

We already have concluded that plaintiffs have failed to prove their claims for breach of contract, intentional misrepresentation and negligent misrepresentation. Application of this principle concerning civil conspiracy Count VI leads straightaway to the conclusion that the plaintiffs' claim for civil conspiracy to breach the franchise agreement, for intentional misrepresentation and for negligent misrepresentation necessarily must fail.

An appropriate order will issue.

                                  /s/ Bernard Markovitz
                                 **BERNARD MARKOVITZ**
                                 U.S. Bankruptcy Judge


Dated: **September 22, 2009**




**FILED**

**SEP 2 2 2009**

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| BONO HOLDINGS, INC., | : | Bankruptcy No. 08-70259 BM |
| | : | |
| **Debtor** | : | Chapter 11 |
| | : | |
| SALONE HOLDINGS, INC., | : | Bankruptcy No. 08-70278 BM |
| | : | |
| **Debtor** | : | Chapter 11 |

| | | |
|---|---|---|
| BONO HOLDINGS, INC., SALONE HOLDINGS, INC., and LAWRENCE J. SALONE, | : | |
| | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | Adversary No. 08-7046 BM |
| | : | |
| QUAKER STEAK & LUBE FRANCHISING CORPORATION; LUBE HOLDINGS, INC.; GARY J. MESZAROS; GEORGE S. WARREN, III; ANDY GUNKLER; DENNIS J. LIEB; MICHAEL J. STACK; and JOHN VOTINO, | : | Adversary No. 08-7047 BM |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

## ORDER OF COURT

**AND NOW**, this **22nd** day of **September**, 2009, for reasons set forth in the accompanying memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that judgment **SHALL BE** and is entered **IN FAVOR OF DEFENDANTS** Quaker Steak & Lube Franchising Corporation, Lube Holdings, Inc., Gary J. Meszaros, George S. Warren III, Andy Gunkler, Dennis J. Lieb,

Michael J. Stack and John Votino and **AGAINST PLAINTIFFS** Salone Holdings, LLC, Bono Holdings, Inc. and Lawrence J. Salone.

It is **SO ORDERED**.

_/s/ Bernard Markovitz_
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

*Case Administrator shall send to:*
cm:   Debtors
     Christopher A. Boyer, Esquire
     John M. Steiner, Esquire
     William J. Labovitz, Esquire
     Edward A. Schenck, Esquire
     Timothy P. Palmer, Esquire
     Benjamin F. Mann, Esquire
     Robert H. Slone, Esquire
     Joseph M. Fornari, Jr., Esquire o/b/o the United States Trustee

**FILED**

SEP 2 2 2009

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

- 2 -